UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| THE WILDERNESS SOCIETY and PRAIRIE FALCON AUDUBON, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. CV08-363-E-EJL |
| v. | ) ) | |
| THE UNITED STATES FOREST SERVICE, et al, | ) ) ) | |
| Defendants, | ) ) | **MEMORANDUM DECISION AND ORDER** |
| and | ) ) | |
| MAGIC VALLEY TRAIL MACHINE ASSOCIATION, an Idaho non-profit Corporation; IDAHO RECREATION COUNCIL, and Idaho unincorporated non-profit association; and BLUERIBBON COALITION, INC., an Idaho non-profit corporation, | ) ) ) ) ) ) ) ) | |
| Intervenor-Applicants. | | |

On February 21, 2012 this Court entered an Order granting in part and denying in part each of the Cross-Motions for Summary Judgment filed by the parties in this case. (Dkt. 88.) In that Order the Court directed the Defendants to determine whether a supplemental Environmental Assessment will be sufficient to satisfy NEPA's requirements or if an Environmental Impact Statement is necessary and ordered Defendants to file a notice with the Court as to how they intend to proceed on or before May 1, 2012. (Dkt. 88.) Such Notices were filed as well as responsive briefing. (Dkt. 89,

90.) On August 8, 2012, the Court held a hearing on the matter taking the outstanding issues under advisement; in particular the Plaintiffs' claims as to the Clean Water Act and compliance with the requirements of certain Executive Orders. (Dkt. 95.) The Court finds as follows.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

On August 29, 2008, Plaintiffs, The Wilderness Society and Prairie Falcon Audubon, Inc., filed the Complaint in this matter challenging the United States Forest Service's ("Forest Service") actions and decisions made in relation to its February 22, 2008 Decision Notice ("DN"), Finding of No Significant Impact ("FONSI"), and Environmental Assessment ("EA"). (Dkt. 1.)[2] These actions and decisions resulted in the project action at issue here, the Sawtooth National Forest Travel Plan Route Designation Revision ("Travel Plan Revision"), which designated 1,196 miles of roads and trails for motorized recreation use on the Minidoka Ranger District of the Sawtooth National Forest in Idaho. Plaintiffs claim the Defendants' decisions and actions violate the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*; the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*; the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*; National Forest Management Act ("NFMA"), 16 U.S.C. § 1600 *et seq.*; Executive Order 11644, as amended by Executive Order 11989; and the implementing regulations of these statutes and executive orders. (Dkt. 1.)

---

[1] The Court has used some of the same language from its previous Order in this Order as the facts and claims have not changed. (Dkt. 88.)

[2] The Complaint names several Federal Defendants including: Forest Service, Jane P. Kollmeyer, and Scott C. Nannenga. This Order will refer to the Defendants collectively as "Defendants."

Defendants counter that their decisions and actions were in accord and fully complied with the applicable standards and requirements of these statutes. (Dkt. 10.) On March 6, 2009, both parties filed Motions for Summary Judgment. (Dkt. 25, 29.)[3]

Prior to the filing of those Motions, however, on February 20, 2009, the Court denied a Motion to Intervene filed by Magic Valley Trail Machine Association, Idaho Recreation Council, and BlueRibbon Coalition. (Dkt. 23.) The Court also denied a later Motion for Reconsideration of that Order. (Dkt. 49.) A Notice of Appeal was filed as to the decisions regarding intervention causing a lengthy delay in ruling on the pending Motions for Summary Judgment in this case. (Dkt. 27.) That appeal was decided on January 14, 2011. (Dkt. 66.) The Ninth Circuit Mandate issued on March 8, 2011 after which the Court considered and granted an Amended Motion to Intervene. (Dkt. 68, 74, 75.) The Court then, on June 6, 2011, granted the parties' Motion to Renew the Motions for Summary Judgment. (Dkt. 77.) Each side was allowed time to supplement their previous summary judgment briefing after which these Motions for Summary Judgment finally became ripe. (Dkt. 77, 79-87.)

After reviewing all of those materials, the Court issued its Order granting in part and denying in part the respective cross-motions for summary judgment. (Dkt. 88.) Specifically, the Court concluded that the Defendants had satisfied their statutory duties except with regard to the site-specific impacts of 94 miles of non-system routes, the unknown cumulative impacts of the 650 miles of non-system routes, and the unique

---

[3] Both sides also filed various corrections to their summary judgment materials that the Court has considered. (Dkt. 31, 35, 52.)

aspects of the Minidoka Ranger District as to Yellowstone cutthroat trout. (Dkt. 88.) The Court directed the Defendants to reexamine their conclusions regarding the project's significance and impact and determine whether it could resolve the shortcomings in the EA by supplementation or if a full EIS is necessary. (Dkt. 88 at 25.) The Court reserved its ruling on the claims alleging violations of the CWA and the Executive Orders.

In May of 2012, the Defendants submitted their Notice of Intent on How to Proceed to which the Plaintiffs responded. (Dkt. 89, 90.) Defendants' Notice proposed that they would complete a supplemental EA no later than March 2014. (Dkt. 89.) Plaintiffs question the adequacy of the Defendants' proposal and requests interim relief pending completion of the NEPA process to ensure the forest resources are protected. (Dkt. 90.)

The Court held a hearing and took the outstanding issues under advisement in anticipation of a decision in another Ninth Circuit case entitled *Klamath-Siskiyou Wildlands Center v. Grantham.* (Dkt. 95.) The parties advised the Court once that decision was issued and have also provided other supplemental authority they believe to be applicable in this case. (Dkt. 96, 97, 98, 100, 101.) The Court has reviewed these materials and finds as follows.

## DISCUSSION

## 1.    Notice of Intent on How to Proceed

At the hearing, the parties disagreed regarding the timing of the proposed supplemental EA, which Defendant proposed would be issued no later than March 2014. The Court has considered this proposal at length and finds it to be reasonable. Given the

size of the area and the seasonal nature of the additional research that needed to be completed, the Court finds the time-frame for issuance of the supplemental EA as being no later than March 2014 is appropriate.

Additionally, following the August, 2012 hearing, the parties notified the Court that they agreed that the outstanding CWA and Executive Order claims were ripe for the Court's decision. The Court has gone back and reviewed the materials previously submitted regarding these claims as well as the arguments made at the hearing and the supplemental materials provided by the parties. Having done so, the Court finds as follows.

## 2.     Violation of CWA by Failing to Analyze and Consider Water Quality Standards

In the prior order on the Cross-Motions for Summary Judgement, the Court reserved its ruling on the CWA issue in light of its decision on the NEPA and NFMA claims until after the Forest Service either supplemented the EA or issued an EIS. (Dkt. 88 at 35.) At the last hearing, the parties agreed that the CWA claim is ripe for the Court's consideration. (Dkt. 95.)

Following the hearing, the Intervenor-Defendants filed a Notice of Supplemental Authority citing to a recent decision in *Klamath-Siskiyou Wildlands Center v. Grantham*, 899 F.Supp.2d 948 (E.D. Cal. 2012). (Dkt. 96.) The Intervenor-Defendants argue that case rejected similar CWA claims as those raised here. In response, Plaintiffs counter that the *Klamath-Siskiyou* case is distinct from the claim raised here. (Dkt. 97.)

The court in *Klamath-Siskiyou* considered a Final Environmental Impact Statement issued in regard to the Klamath National Forest Motorized Travel Management Environmental Impact Statement. There, the court held that the Forest Service complied with the provisions of the CWA concerning nonpoint source pollution and that the state antidegradation requirements do not apply to federal agencies. *Id.* at 969-70. (noting the distinction between the CWA's regulations for point source discharges and nonpoint source pollution).[4] In *Klamath-Siskiyou* the court also concluded that the plaintiffs had not identified any state water quality statutes or regulations that the federal agency had failed to comply with. *Id.* at 969. Although the *Klamath-Siskiyou* decision is not binding precedent, this Court has reviewed and considered it in light of the arguments raised by the parties.

For the reasons discussed in this Order, the Court finds that the Defendants' conclusion that they satisfied the applicable water quality statutes and regulations to be arbitrary and capricious. In doing so, however, this Court questions whether the Plaintiffs have identified any violations of Idaho's water quality statutes or regulations that the Defendants have failed to comply with. Absent any such violations, Plaintiffs' CWA fails as a matter of law. *See Id.* at 969. At this stage, however, the Court again finds it most efficient to deem both motions for summary judgment to be moot as to the CWA claim and direct the Defendants to address the water quality issues in the Supplemental EA that is scheduled to be issued in March of 2014. If a violation of water quality statutes or

---

[4] The Plaintiffs' claim in this case goes to nonpoint source pollution violations. (Dkt. 29-1 at 20.)

regulations exists, the Plaintiffs will have an opportunity to challenge the same at that time. In an effort to give the parties some direction on this issue, however, the Court will discuss the arguments regarding the CWA claim.

"The stated purpose of the Clean Water Act (33 U.S.C. §§ 1251 to 1376) is 'to restore and maintain the chemical, physical, and biological integrity of the Nation's waters.'" *Greater Yellowstone Coal. v. Larson*, 641 F.Supp.2d 1120, 1130 (D. Idaho 2009) (quoting 33 U.S.C. § 1251(a)). "The CWA requires federal agencies to determine that approved actions do not result in pollution in violation of state water quality standards." *Greater Yellowstone Coal. v. Lewis*, 628 F.3d 1143, 1149 (9th Cir. 2012) (citing 33 U.S.C. § 1323(a)). "Under the Act, federal agencies have a duty to ensure that activities carried out on federal land comply with state water quality standards in the same manner and to the same extent as any nongovernmental entity." *Larson*, 641 F.Supp.2d at 1130 (citing 33 U.S.C. § 1323(a)).

The provision of the CWA that Plaintiffs allege has been violated is 33 U.S.C. § 1323 which provides the agency "shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution...." In particular, Plaintiffs point to the Water Quality Standards ("WQS") applicable to the project area. (Dkt. 51 at 9) (citing 40 C.F.R. § 131.2; IDAPA § 58.01.02.) "Idaho law authorizes the Idaho Department of Water Quality ("IDEQ") to promulgate regulations to achieve maintenance of existing beneficial uses of waters." *Larson*, *supra* (citing Idaho Code, § 39-3601; § 39-3603). The IDEQ regulations appear at Idaho Administrative Code

58.01.02.001, *et seq. Id.* The relevant Idaho law is that applicable to water quality as contained in the antidegradation policy. Idaho Code § 39-3603; Idaho Admin. Code r. 58.01.02.051-052.

Specifically, Plaintiffs' CWA claim asserts the "Forest Service violated CWA because it failed to demonstrate that the designation of a 1,196-mile motorized route network system adheres to water quality protections;" i.e. Defendants failed to properly analyze and consider the impact of the project on water quality standards. (Dkt. 29-1 at 20.) Plaintiffs point, in particular, to the letter written by the EPA to the Forest Service questioning whether the project complied with the CWA. (TM3247.) Plaintiffs also argue the Forest Service failed to: properly account for the water quality impacts of the abandoned 650 miles of non-system routes with no plan for stabilizing or decommissioning of those routes; reduce designated route densities below its own threshold measurements; and analyze the projects impacts on a subwatershed level. (Dkt. 29-1 at 22, Dkt. 51 at 9-11); *see also* (Dkt. 97) (arguing the net result of the Travel Plan Revision is beneficial to water quality is arbitrary and capricious because: the Defendants failed to properly consider the Travel Plan Revision's impact on site-specific water quality as required by the CWA; the Project does not satisfy Idaho's water quality standards that apply to specific waters; the Travel Plan Revision does not satisfy the Defendants' own subwatershed standards; and the Travel Plan Revision violates Idaho's Nonpoint Source Management Plan requirements for using BMP for the 650 miles of non-system routes that were abandoned).

In response, Defendants maintain the project's route densities do not violate the CWA or Idaho law because the project reduces the route density in all but two subwatersheds; and in those two subwatersheds the route density remains unchanged. (Dkt. 31 at 19-22, Dkt. 43 at 17-18.) The Defendants also assert that the Forest Service properly analyzed the projects impacts on the subwatersheds and considered Idaho's law as well as the SNF Plan in concluding the action would maintain or restore water quality to fully supported beneficial uses. (Dkt. 43 at 20) (citing TM2048-49.) Defendants further contend the project does not violate the CWA in regards to the 650 miles of non-system routes. (Dkt. 43 at 19.) The project complies with the CWA, Defendants argue, pointing out that there is no requirement that route densities be reduced below any particular thresholds. (Dkt. 43 at 18) (Dkt. 50 at 12.) Defendants maintain that because the project will overall be beneficial in reducing or maintaining existing route densities, including those that exceed the thresholds, it has not violated the CWA or Idaho law. (Dkt. 31 at 21, Dkt. 50 at 11.)

"Because the Clean Water Act does not articulate its own standard of review, we review agency action pursuant to the Administrative Procedures Act. *City of Olmsted Falls, Ohio v. United States Environ. Protection Agency*, 435 F.3d 632, 636-37 (6th Cir. 2006) (citation omitted). "We review agency actions to see if they were arbitrary, capricious, or an abuse of discretion, or otherwise not in accordance with law." *Id.* (citing 5 U.S.C. § 706(2)(A)). "We accord deference to the agency's views, but we still conduct 'a thorough, probing, in-depth review.'" *Id.* (quoting *Citizens to Preserve Overton Park, Inc., v. Volpe*, 401 U.S. 402, 415 (1971) (abrogated on other grounds)).

**MEMORANDUM DECISION AND ORDER**          9

### a.     Consideration of the EPA's Position

Plaintiffs assert the Defendants failed to properly consider a particular letter written by the EPA on December 20, 2007 to the Forest Service questioning whether the project complied with the CWA. (TM3247.) Defendants maintain this contention is not a violation of the CWA or Idaho's antidegradation policy and, regardless, the EPA is in support of the Travel Plan Revision. (Dkt. 43 at 18.) The Court agrees with the Defendants. The EPA's letter (TM3247) does not amount to a violation of either the CWA or Idaho law. As determined in the Court's previous Order, the mere fact that the Forest Service and EPA may have differing views of the project's impact does not, in and of itself, mean the Forest Service's DN/FONSI are arbitrary and capricious. Just the opposite here, the Court finds the Forest Service satisfied its obligation to "consider and respond to the comments of other agencies," even though it did not adopt the EPA's recommendations. *Arkansas Wildlife Fed'n* , 431 F.3d at 1101; *Hells Canyon Pres. Council*, 9 F.Supp.2d at 1242 ("An agency is required to consider the comments of other agencies, but it does not have to defer to them when a disagreement exists.").

The Court does not, however, agree with the Defendants' statement that the EPA is "generally supportive" of the Travel Plan Revision. (Dkt. 43 at 18 n. 11.) The EPA's letter states that it supports the "overall reductions" in route density "as they are likely to reduce sediment and other water quality impacts to nearby waterbodies." (Dkt. 43 at 18 n. 11.) In reviewing the letter, however, the Court finds the letter generally reveals that the EPA was troubled by the lack of specifics as to various aspects of the Travel Plan Revision and suggested several clarifications of particular portions of the Travel Plan

**MEMORANDUM DECISION AND ORDER          10**

Revision be made in the EA. (TM3245-48.) Regardless, the fact remains that the letter itself does not give rise to a violation of either the CWA nor Idaho law.

### b.    650 Miles of Existing Unauthorized Routes

Plaintiffs argue the Travel Plan Revision's abandonment of 650 miles of non-system routes without any mitigation measures in place violates water quality standards. (Dkt. 29 at 22-23.) Even if there may still be some adverse impacts to water quality by virtue of the existence of the unauthorized routes, Defendants maintain the closing of these routes to motor vehicle use will reduce adverse impacts to water quality. (Dkt. 43 at 20.)

The Court finds the Defendants did consider the impacts of the abandoned non-system routes to some extent; at least in so far as they identified the routes that would be closed. (TM12993.) The EA recognizes the Forest Plan and its intent to maintain or restore water quality to fully supported beneficial uses. (Dkt. 48 at 20) (citing SWST01, TM2048-49.) Further, the EA cited to a document entitled Soil Water effects analysis - Environmental Consequences, prepared by John Chatel, which contains tables detailing the Remaining non-system route densities by subwatershed and alternative for Alternatives 2, 3, and 4 in the various districts impacted. (TM12133-36.) As to the Defendants' finding that simply eliminating cross-country travel will reduce adverse impacts on water quality, however, the Court finds that conclusion to be arbitrary and capricious because it fails to consider mitigation efforts needed in regards to the abandoned non-system routes.

Many of the materials cited in the EA recognized the potential negative impacts on water quality that may occur from the abandoned non-system routes and the need for mitigation. (TM2009, 2047.) For instance, Mr. Chatel's document states:

> Routes subject to heavy motorized use are more likely to see greater erosion from soil compaction than non-motorized routes, Many non-system routes would also slowly revegetate and close in overtime reducing surface erosion. Still, field reviews of the most problematic non-system routes should be complete to determine if natural recovery alone is enough to elevate all problems. If it i needed to prevent resource damages.

(TM12132.) Throughout the EA it is noted that the non-system routes that will remain may "result in localized impacts to water quality" but then the EA goes on to state: "However, impacts would not be as great as those portrayed under Alternative 1 because non-system routes would not be open to motorized vehicles." (TM2009, 2011.) Though the EA recognizes the possible impact from the abandoned routes, it does not discuss or propose possible mitigation solutions to be used to stabilize the non-system routes that are proposed to be abandoned other than to say the abandoned routes should be monitored. The EA's conclusion again relies upon the fact that eliminating motorized use of the non-system routes will eventually result in better water quality conditions than if motorized use is allowed to continue. The Court finds this failure to consider and discuss mitigation measures in regards to the abandoned non-system routes to be arbitrary and capricious in that it does not fulfill the Defendants' obligations to address the mitigation needed to minimize the impact the proposed activities will have on the water resources in the area.

c.      **Route Density Threshold Measures**

Plaintiffs' CWA claim argues the Forest Service violated the CWA by failing to reduce route densities in all subwatersheds below certain threshold measures. Defendants counter that neither Idaho law nor the CWA imposes such a requirement. (Dkt. 43 at 18.) Defendants maintain that there is no violation of Idaho's antidegradation policy as that policy only requires that existing beneficial uses not be further impaired. Here, Defendants argue, there will be no further impairment of beneficial uses because the Travel Plan Revision reduces or maintains existing route densities; reducing route density in all but two subwatersheds and in those two subwatersheds the route density remains unchanged. (Dkt. 43 at 18) (comparing Table 13 at TM12074 with Table 42 at TM12115.) Plaintiffs respond that the Defendants violated the CWA by reaching the conclusory assertion that the Travel Plan Revision's selected alternative would maintain or restore water quality to fully supported beneficial uses even though there are subwatersheds with high route densities that exceed the Defendants' own threshold measurements for "Functioning at Unacceptable Risk," $1.7 \text{ mi/mi}^2$, and "Functioning at Risk," $0.7 \text{ mi/mi}^2$. (Dkt. 51 at 9-10.)

The Court agrees with the Defendants that there is no violation of either the CWA or Idaho's antidegradation policy solely by virtue of the fact that there are some subwatersheds in the project area that exceed certain particular density measurements. However, as to the Plaintiffs' claim challenging the Defendants' conclusion that it has complied with the CWA even though there are high route densities in the area, the Court finds the Defendants' conclusions to be arbitrary and capricious.

**MEMORANDUM DECISION AND ORDER**          13

As the Court stated in its prior Order, the conclusions reached in the EA on this issue are "based on the same generalized beneficial assumptions" that the Court previously determined are "insufficient to satisfy the analytical demands required" to satisfy the CWA. (Dkt. 88 at 35.) In the EA, the Forest Service recognizes that non-system routes will remain on the landscape and "may contribute to localized impacts to aquatic resources, however, not to the same degree as when they were open to motorized uses. Many non-system routes would also slowly revegetate and close in over time, reducing potential effects to aquatic resources." (TM2049.) This conclusion suffers from the same shortcomings as the Court determined to be lacking in the NEPA analysis; doing something is better than doing nothing. (Dkt. 88.) The Court is not second guessing the expertise of the Defendants. Instead, the Court finds that the Defendants' explanation for there decision fails to consider important aspects of the issue and is, therefore, arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

The Court's conclusion that the Defendants' findings are arbitrary and capricious is based on the fact that the Defendants failed to provide a rational explanation for their generalized assumption that closing roads to motorized use will improve water quality even though there is research to show that the existence of the roads themselves, without any mitigation efforts, may still negatively impact water quality. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (finding an agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made."). As such, the Court concludes that the Defendants have not

adequately complied with their obligations under the CWA and Idaho's antidegradation act to show that the waters in the project area will not be negatively impacted by the project and/or that mitigation measures would cure any such negative effects. The Court directs the Defendants to address this issue in the supplemental EA that is due to be issued no later than March of 2014.

**3.     Violation of Executive Order 11644's Travel Planning Route Designation Criteria**

Plaintiffs final argument is that the Forest Service failed to minimize damage to soil, watershed, vegetation, or other resources as required by Executive Order 11644, as amended by Executive Order 11989, and 36 C.F.R. § 212.55 because it did not properly account for the harm caused by the prior cross-country travel management regime. (Dkt. 1 at ¶ E and Dkt. 29-1 at 24.) Defendants counter that Executive Order 11644 is not actionable; i.e. that private parties may not enforce compliance with executive orders. (Dkt. 31 at 25, Dkt. 43 at 23.) Alternatively, Defendants argue they have satisfied the requirements of the Executive Orders. (Dkt. 43 at 24.)

"In 1972, President Nixon issued Executive Order No. 11644 directing the land management agencies, including the Forest Service, to adopt regulations providing for administrative designation of areas and trails open and closed to motor vehicle use." *Idaho Conservation League v. Guzman*, 766 F.Supp.2d 1056, 1060-61 (D. Idaho 2011) (citing Exec. Order No. 11,644, § 3; 37 Fed. Reg. 2877 (Feb. 9, 1972)).[5] "These

---

[5] Executive Order 11644 was implemented to "establish policies and provide procedures that will ensure that the use of off-road vehicles on public lands will be controlled and directed so as to protect the resources of those lands, to promote the safety of all users of those lands, and to minimize conflicts among the various uses of those lands." *See Gardner v. United States Bureau of Land Mgmt.*, 633

regulations must 'direct that the designation of such areas and trails will be based upon [1] the protection of the resources of the public lands, [2] promotion of the safety of all users of those lands, and [3] minimization of conflicts among the various uses of those lands.' These regulations also must "require that the designation of such areas and trails shall be in accordance with" certain "minimization criteria." *Id.* The reason for the order was to "further the purpose and policy of NEPA" and established "criteria by which federal agencies were to develop regulations and administrative instructions for the designation of areas and trails on which ORVs would be permitted." *See Gardner v. United States Bureau of Land Mgmt.*, 633 F.Supp.2d 1212, 1217 (D.Or. 2009). It also required agencies to "monitor the effects" of ORV use on the public lands and "[o]n the basis of the information gathered, they shall from time to time amend or rescind designations of areas or other actions taken pursuant to this order as necessary to further the [NEPA]." *Id.*

Thereafter, in 1977, President Carter issued Executive Order No. 11989, amending Executive Order 11644 and adding additional protections, "which strengthened the agencies' obligation to protect public lands from the harm caused by ORV use." *Gardner*, 633 F.Supp.2d at 1217 (citing Exec. Order 11989, 42 Fed.Reg. 26959 (May 24, 1977)); *Guzman*, 766 F.Supp.2d at 1061 (citing Exec. Order No. 11989; *Utah Shared Access Alliance v. Carpenter*, 463 F.3d 1125, 1130 (10th Cir. 2006)). "Executive Order 11989 directs the land management agencies, including the Forest Service, to close certain trails

---

F.Supp.2d 1212, 1217 (D.Or. 2009) (quoting Exec. Order No. 11644, 37 Fed.Reg. 2877 (Feb. 8, 1972)).

and other areas upon a finding that ORV use 'will cause or is causing considerable adverse effects on the soil, vegetation, wildlife, wildlife habitat or cultural or historic resources of particular areas or trails of the public lands.' These areas are to stay closed until the agency "determines that such adverse effects have been eliminated and that measures have been implemented to prevent future recurrence." *Guzman*, 766 F.Supp.2d at 1061; *see also Gardner*, 633 F.Supp.2d at 1217 (citing § 2 (amending Exec. Order 11644, § 9(a))).

In the Court's prior Order it held that "the Plaintiffs can challenge the Defendants' compliance with Executive Orders 11644 and 11989." (Dkt. 88 at 42.) There, however, the Court reserved its ruling as to whether the Defendants violated the Executive Orders. (Dkt. 88 at 44.) The parties now seek a ruling on whether the Defendants complied with the Executive Orders.

The standard for reviewing compliance with the Executive Orders is described in *Carmel-By-The-Sea*, wherein the Ninth Circuit stated:

> An agency's findings under an Executive Order will be set aside only if they are "arbitrary, capricious, [or] an abuse of discretion" under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *National Wildlife*, 629 F.2d at 592 (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). We consider whether the agency's "decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* Our inquiry is to be "searching and careful," but our review remains narrow: we will not substitute our judgment for that of the [agency]. *Id.*

123 F.3d at 1166. Plaintiffs claim the Defendants have not complied with the minimizing requirements of Executive Order 11644, as amended by Executive Order 11989, in particular as to the Minidoka Ranger District's degrade water quality, aquatic, and

watershed conditions. (Dkt. 51 at 14.) The language of those directives that Plaintiffs allege has been violated, § 3 of Executive Order 11644, mandates that the Forest Service regulations be in accordance with a set of criteria regarding route designations to include minimizing "damage to soil, watershed, vegetation, or other resources of the public lands," "harassment of wildlife or significant disruption of wildlife habitats," and "conflicts between off-road vehicle use and other existing or proposed recreational uses of the same or neighboring public lands, and to ensure the compatibility of such uses with existing conditions in populated areas, taking into account noise and other factors." Exec. Order 11644 § 3(a). These minimizing considerations are essentially mirrored in the Forest Service Regulations. *See* 36 C.F.R. § 212.55(b). Likewise, the 2005 Travel Management Rule requiring designation of routes for motor vehicle use whereby the agency considers the various effects of those designations and a host of defined factors includes similar language. Plaintiffs argue there is no rational connection between the designation of the 1,196-mile route network, the abandonment of 650-miles of non-system routes, without plans for stabilization and decommissioning, and the route designation criteria. (Dkt. 51 at 15.) In particular, Plaintiffs assert that the Defendants failed to properly account for the past damage to water quality, aquatic, and watershed conditions across the Minidoka Ranger District caused by the motorized cross-country travel management regime. (Dkt. 29 at 24-25.)

Defendants counter that they have complied with the route designation criteria by minimizing the effects of the Travel Plan Revision on the forest resources as displayed in its analysis in the EA. (Dkt. 43 at 24.) In particular, Defendants point to the sections of

the EA discussing the effects of the Travel Plan Revision on bald eagles in the Minidoka Ranger District, sage-grouse nesting habitat and early/late brood rearing habitat, and the northern goshawk. (Dkt. 43 at 24.) Further, the Defendants point to the Forest Plan consistency checklist as demonstrating that the Travel Plan Revision's potential effects will be consistent with appropriate standards and guidelines for soil, water, riparian, and aquatic resources. (Dkt. 43 at 24.)

The Court has reviewed the EA and administrative record including, in particular, those sections identified by the Defendants concerning this issue. Having done so, the Court finds the Defendants' findings and conclusions made in regard to the Executive Orders claim are arbitrary and capricious.

The portions of the administrative record cited to by the Defendants containing documents that discuss the Travel Plan Revision's impact on certain species: bald eagles, sage-grouse, and the northern goshawk. In addition, the Defendants cite to the Travel Management Plan's consistency checklist. (Dkt. 43 at 24) (citing TM13617-26.) The checklist contains a section entitled "Management Direction for Soil, Water, Riparian, and Aquatic Resources - STANDARDS" that generally states the actions "shall be designated in a manner that maintains or restores water quality to fully support beneficial uses and native and desired non-native fish species and their habitat...." (TM13619.) The checklists then identifies where, why, and how the direction will be implemented and show compliance stating:

> The proposed action would maintain or restore water quality to fully
> support beneficial uses and native and desired non-native fish species and
> their habitat. It would accomplish this by eliminating cross-country travel

**MEMORANDUM DECISION AND ORDER**      19

> and establishment of new motorized non-system routes, removing several
> system routes, and limiting motorized use to designated routes only. These
> actions would help to reduce impacts from surface erosion, route
> encroachments of stream channels and riparian areas, fish passage from
> stream fords, and slope hydrology from water interception where current
> activities are decreased the most. Collectively, these actions would help
> reduce risks and threats to aquatic resources and help make small
> improvements to fish habitat and water quality.

(TM13619.) The checklist references the MATRIX located in Appendix B to assist in

determining compliance with this standard. In the GUIDELINES portion of the same

section relating to water and aquatic resources, the checklist recognizes the need to

comply with the CWA and the Idaho Nonpoint Source Management Plan stating "The

proposed action has been designed to minimize water quality impacts and meet

specifications outlined in TMDLs." (TM13621-22.) This section goes on to provide a

nearly identical statement to that quoted above from the STANDARDS section with the

only exception being the conclusion that: "Therefore, it would not impact water quality

and cause the need to address the 11 questions outline[d] in the Nonpoint Source

Management Plan." (TM13622.)

　　　These materials identified by the Defendants reveal that the Defendants found that

the proposed action would not impact water quality and, therefore, they need not address

the 11 questions outlined in Idaho's Nonpoint Source Management Plan to achieve

federal consistency with the CWA as implemented by the State. Effectively concluding

that water quality is not impacted by the project because it eliminates cross-country

travel, establishes new motorized non-system routes, removes several system routes, and

limits motorized use to designated routes. The Court finds this conclusion to be arbitrary and capricious for the same reasons as stated previously as to the other claims.

The fact that the Travel Management Rule will designate some roads, decommission others, and eliminate cross-country travel does not, in and of itself, led to the conclusion that water quality will not be impacted by the project. As Plaintiffs point out, the abandonment of routes may result in a greater impact to water quality as those routes deteriorate. (TM12132) ("field reviews of the most problematic non-system routes should be complete to determine if natural recovery alone is enough to elevate all problems. If it is not, then more permanently removals may be needed to prevent resource damages.") The fact that this was not considered, or at least the administrative record does not show that the Defendants properly considered it, renders the Defendants' conclusions that water quality would be maintained or restored lacking in a proper explanation.[6] Because the Defendants' failed to consider important aspects of the issue, the Court finds the Defendants acted arbitrarily and capriciously and in violation of the Executive Orders. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. The Defendants should address this issue in the anticipated March 2014 supplemental EA.

---

[6] It may be that the Defendants did consider this issue in reaching its conclusion. The is simply nothing in the record that shows the Defendants gave proper consideration and/or explanation to the issue before concluding that no resource damage would occur. This may be corrected in the anticipated Supplemental EA.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED as follows:

1)      Defendants shall issue a Supplemental Environmental Assessment no later than **March 31, 2014**. Thereafter, the parties shall pursue the requisite administrative review process concerning that supplemental Environmental Assessment.

2)      The Plaintiffs' Motion for Summary Judgment and the Defendants' Motion for Summary Judgment are deemed **MOOT** as to the Clean Water Act Claim.

3)      The Plaintiffs' Motion for Summary Judgment is **GRANTED** and the Defendants' Motion for Summary Judgment is **DENIED** as to the Violation of Executive Orders Claim.

4)      This case is **ADMINISTRATIVELY CLOSED** with the parties being granted leave to re-open the case, if necessary, after the supplemental EA has been issued and any further proceedings are concluded making it ripe for the Court's review.

DATED:  **October 22, 2013**

Honorable Edward J. Lodge
U. S. District Judge